**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-20153-CR-ALTMAN**

**UNITED STATES**,

v.

**CARLOS ENRIQUE FIGUEROA OSPINA**,

    *Defendant*.
_____/

## ORDER

Carlos Enrique Figueroa Ospina was convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine. He now asks for compassionate release because he has obstructive sleep apnea. *See generally* Motion for Compassionate Release and Reduction in Sentence (the "Motion") [ECF No. 74]. We deny his Motion for three reasons. *First*, the § 3553(a) factors weigh against a reduction. *Second,* he's failed to show that his circumstances are either extraordinary or compelling. *Third*, he hasn't established that he no longer poses a danger to his community.

### THE FACTS

Carlos Enrique Figueroa Ospina is a 38-year-old Colombian national. *See* Presentence Investigation Report (the "PSI") [ECF No. 52] at 3. On February 20, 2019, Figueroa Ospina and three others were caught transporting more than 2,700 kilograms of cocaine on a boat in the Pacific Ocean—approximately 187 nautical miles northwest of Esmeraldas, Ecuador. *See* Factual Proffer Statement (the "Proffer") [ECF No. 28] at 1–2. On March 20, 2019, Figueroa Ospina and his codefendants were arrested by the DEA and brought to the Southern District of Florida. *Id.* at 2. After waiving his *Miranda* rights, Figueroa Ospina confessed that someone had paid him 20 million Colombian pesos to make the drug run, and that he was expecting the group to be paid another 100 million pesos once they successfully completed the trip. *See id.* at 2–3.

Figueroa Ospina pled guilty to one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70506(b). *See* Judgment [ECF No. 69] at 1. On August 23, 2019, we sentenced Figueroa Ospina to 96 months in prison, to be followed by five years of supervised release. *See id.* at 2–3. According to the BOP, Figueroa Ospina has a projected release date of December 15, 2025. *See* the Government's Response in Opposition to the Motion for Compassionate Release (the "Response") [ECF No. 77] at 2; *see also Find an Inmate*, FEDERAL BUREAU OF PRISONS, bop.gov/inmateloc/ (last accessed Oct. 7, 2022). He therefore has 38 months—or about 40%—of his sentence remaining.

## ANALYSIS

Section 3582 sets out the order in which the Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test, as outlined in U.S.S.G. § 1B1.13 cmt. n.1. *Fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Ibid.*; *see also United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020) (Altman, J.) (applying this framework). We discuss each of these four steps in turn.

   I.   **Exhaustion of Administrative Rights to Appeal**

The Government concedes that Figueroa Ospina has exhausted his administrative remedies.

*See* Response at 2; *see also* Motion at 14. So, we'll consider the merits of his Motion.

## II. 18 U.S.C. § 3553(a)

After considering the relevant § 3553 factors, we sentenced Figueroa Ospina to 96 months in prison. *See* Judgment at 2. Figueroa Ospina now argues that the § 3553(a) factors militate in favor of release because (1) he is a first-time offender convicted of a non-violent crime; (2) he has taken his term of incarceration seriously, hasn't received any reprimands in prison, and has taken advantage of the prison's educational courses; and (3) he's committed to becoming a successful member of the community upon his release. *Id.* at 14.

But we already considered Figueroa Ospina's history and characteristics when we sentenced him, and we aren't persuaded that the non-violent nature of his crime, his conduct while in prison, or his future plans justify a reduction now. To understand why, let's review the § 3553(a) factors.

District courts must impose a sentence that's "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). "These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment." *United States v. Boykin*, 839 F. App'x 432, 433 n.2 (11th Cir. 2021) (citing 18 U.S.C. § 3553(a)(2)). "The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Ibid.* (citing 18 U.S.C. § 3553(a)(1), (3)–(7)).

The first factor—the "nature and circumstances of the offense," § 3553(a)(1)—weighs against early release. Figueroa Ospina, remember, was caught transporting approximately 2,742 kilograms (more than *6,000 pounds*) of cocaine. *See* Proffer at 2. So, while Figueroa Ospina's conviction was for

3

a non-violent crime, we cannot say that it wasn't serious. Drug dealing—whether it's cocaine, heroin, or opioids—ruins lives, destroys communities, and warrants stiff penalties. *Cf.* U.S. Sentencing Comm'n, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* at 3–4 ("Regardless of the quantity of drug involved, distributing any of the primary domestic illegal drugs—heroin, cocaine (powder or crack), methamphetamine, PCP, LSD, or marijuana—is a serious crime. All of these drugs cause great harm to individuals and to society at large, and the stern punishments meted out under federal law for drug distribution reflect congressional, executive, and Sentencing Commission judgment about the gravity of these offenses and the menace caused by these drugs."). In short, Figueroa Ospina's crime was extremely serious and counsels against early release.

*Second*, Figueroa Ospina is wrong to suggest that his "history and characteristics," § 3553(a)(1), justify early release simply because he's a first-time, non-violent offender who's taken his incarceration seriously. We considered Figueroa Ospina's criminal history when we sentenced him, *see* PSI at 7, and we gave him a sentence *below* the guideline range (in large part) because this was his first offense. But we didn't think a lower sentence was warranted then, and we don't think it's appropriate now.

It's true that, during his incarceration, Figueroa Ospina has behaved himself. *See* Motion at 14. But, while we commend Figueroa Ospina's efforts at rehabilitation, we're unconvinced that his behavior while incarcerated justifies his early release. That's because, unlike a violent criminal (who can continue to act violently while in custody), incarceration has stripped Figueroa Ospina of the mechanisms he used to commit his crimes: He doesn't have access to a boat, or to 2,700 kilograms of cocaine, while in prison. So, it isn't quite fair to say that his spotless conduct reveals some compelling reformation in his behavior because he simply *cannot*, in his current setting, commit the only crime he's ever shown any interest in. In sum, Figueroa Ospina's "history and characteristics" likewise counsel against early release.

The remaining factors—the need for the sentence imposed to "reflect the seriousness of the offense," to "promote respect for the law," to "provide just punishment for the offense," to "afford adequate deterrence," and to "protect the public from further crimes of the defendant," § 3553(a)(2)—weigh heavily against release. *See* § 3553(a)(2)(B), (C). As we've suggested, Figueroa Ospina participated in extremely harmful criminal conduct by attempting to deliver staggering quantities of addictive drugs for his own financial gain. While Figueroa Ospina contends that he's committed to becoming a successful member of the community, we don't find this promise sufficient to protect the public from future crimes he may commit. In the end, to release Figueroa Ospina now would send precisely the *wrong* message: that drug crimes aren't serious, that the dangers of drug trafficking are overstated, and that our criminal laws needn't be strictly followed. Releasing Figueroa Ospina now, in other words, would *decrease* rather than increase the public's respect for the law.

The § 3553(a) factors thus weigh decisively against early release.

### III.     18 U.S.C. § 3582

District Courts have no inherent authority to modify a prison sentence. *United States v. Diaz-Clark*, 292 F.3d 1310, 1315, 1319 (11th Cir. 2002). Instead, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips*, 597 F.3d 1190, 1194–95 (11th Cir. 2010). The statute that governs sentence reductions for compassionate medical release provides, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.–** The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

5

>  imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>  (i)   extraordinary and compelling reasons warrant such a reduction; or
>
>  (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
>  (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure[.]

18 U.S.C. § 3582(c)(1).

Figueroa Ospina hasn't argued that he qualifies for release under § 3582(c)(1)(A)(ii), *see generally* Motion, so the viability of his request turns on the "extraordinary and compelling reasons" test in § 3582(c)(1)(A)(i). But § 3582 never describes the kinds of "[e]xtraordinary and compelling reasons" that might "warrant a reduction." Under 28 U.S.C. § 994, however, the United States Sentencing Commission is authorized to "describe what should be considered extraordinary and compelling reasons for sentence reduction [under 18 U.S.C. § 3582]." 28 U.S.C. § 994(t). And the Commission has helpfully defined the contours of the test as follows:

>  **1. Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>  **(A) Medical Condition of the Defendant.**
>
>  (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>  (ii) The defendant is

6

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13 cmt n.1.

The reference to "subdivision (2)" requires Figueroa Ospina to show that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). And § 3142(g), in turn, instructs federal courts to consider the following factors when determining whether a defendant poses a danger to the safety of any other person or the community:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> >
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

Figueroa Ospina bears the burden of establishing *both* that his circumstances qualify as "extraordinary and compelling reasons" *and* that he no longer represents a danger to any other person or the community. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ) (noting that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing" that compassionate release is warranted); *Cannon v. United States*, 2019 WL 5580233, at *2 (S.D. Ala. Oct. 29, 2019) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."); *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (Hernandez Covington, J.) ("[The defendant] bears the burden of establishing that compassionate release is warranted.").

As a preliminary matter, Figueroa Ospina cannot satisfy the "Age of the Defendant" test because he's 38 years old, not 70, and has not alleged any age-related decline. *See generally* Motion. His request for relief, then, hinges on his ability to meet either of the two prongs of the "Medical Condition of the Defendant" test. The first element requires him to show that he suffers from a "terminal illness." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(i). But Figueroa Ospina isn't suffering from a terminal illness, *see generally* Motion (failing to claim that he is), so he must satisfy the second element by establishing that he suffers from one of three types of conditions "that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii).

Figueroa Ospina contends that his "Obstructive Sleep Apnea, Upper Respiratory frequent symptoms, and the other conditions Petitioner will begin to develop if he gets contagious from COVID-19 is an extraordinary and compelling circumstance warranting release." Motion at 8. But he never describes his condition as (1) a "serious physical or medical condition," (2) "a serious functional or cognitive impairment," or (3) a part of his "deteriorating physical or mental health because of the aging process," as required by U.S.S.G. § 1B1.13 cmt n.1(1)(A)(ii). *See id.* Instead, he claims that his sleep apnea and other respiratory symptoms, combined with hypothetical conditions he may develop in the future, *and* COVID-19—all contracted together—would threaten his health. *See* Motion at 8. But these conditions—even taken together—don't amount to the kinds of "extraordinary and compelling" circumstances that would entitle Figueroa Ospina to relief.

*First*, sleep apnea has never been identified as a health condition that increases the risk of contracting severe COVID-19. *See* Response at 3; *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sept. 2, 2022) (listing 19 conditions that create a high risk of COVID-19 complications).

*Second*, whatever the merits of his COVID-19 arguments when he filed his Motion in January of 2021, there's little to recommend them today. Figueroa Ospina is housed at McRae Correctional Facility, where (as of this writing) a grand total of *two* inmates (out of a total population of 1,044) and *no* staff members have active COVID-19. *See BOP: COVID-19 Cases*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Oct. 8, 2022). And that's probably because the BOP has implemented some rather severe operating procedures, which—as the preceding figures make plain—have been extremely effective at preventing infections among the inmate population, especially in the 18-plus months since vaccines have become widely available. *See BOP's Modified Operating Procedures*, FEDERAL BUREAU OF PRISONS,

9

https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited October 8, 2022). Indeed, the BOP has vaccinated the *vast majority* of its inmates and staff. *See* Bureau of Prisons COVID-19 Cases, available at https://www.bop.gov/coronavirus/ (last accessed Oct. 8, 2022). (noting that the BOP has distributed over 374,600 doses of COVID-19 vaccines to its 143,078 inmates and 36,000 staff members). Since Figueroa Ospina should have gotten his vaccines already, he has little to fear from COVID-19. *See United States v. Broadfield*, 5 F. 4th 801, (7th Cir. July 21, 2021) (holding, in a case involving a defendant with chronic breathing problems, that COVID-19 was not an extraordinary and compelling reason justifying the defendant's compassionate release because the BOP had made an effective vaccine available to him).[1]

      The Court acknowledges that the spread of COVID-19 has been pervasive and devastating. It has challenged our institutions, undermined Americans' ability to maintain their economic security, and altered the way people interact. More fundamentally, it goes without saying, the pandemic has resulted in widespread suffering. In the United States alone, more than 96,000,000 people have tested positive for the disease, and over 1,050,000 Americans have died from it. *See* CDC, *COVID Data Tracker*, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last accessed Oct. 8, 2022). But "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]" *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Additionally, "the BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberthard*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)). The Court sees no reason to depart from the BOP's well-reasoned view on this question.

---

[1] Of course, if Figueroa Ospina has chosen *not* to receive a COVID-19 vaccine, then the dangers he faces from COVID-19 are entirely of his own creation and, in that way, cannot constitute extraordinary or compelling circumstances.

Because Figueroa Ospina has not shown that his circumstances are either "compelling" or "extraordinary," his Motion must be **DENIED**.

### IV.   18 U.S.C. § 3142

Even if Figueroa Ospina *had* shown compelling circumstances, his Motion would still fail because he hasn't established that he no longer poses a danger to his community. As the relevant Guidelines provision makes clear, the "extraordinary and compelling reasons" test *only* applies if "the defendant meets the requirements of subdivision (2)"—that is, only if the Defendant demonstrates that he is no longer poses a threat to society, as defined by 18 U.S.C. § 3142.

Figueroa Ospina cannot establish that he's no longer a danger. In assessing dangerousness, § 3142(g) requires the Court to consider: (1) "the nature and circumstances of the offense . . . , including whether the offense . . . involves . . . a controlled substance"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . (A) the person's . . . past conduct . . . [and] criminal history"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Three of these factors weighs against Figueroa Ospina here.

*First*, "the offense" of conviction involved *three tons* of cocaine.

*Second*, the evidence against Figueroa Ospina was so strong that it compelled him to accept a guilty plea.

*Third*, Figueroa Ospina does not—and cannot—show that his release would pose no "danger to any person or the community." As we've explained, his crime was extremely serious—and its effects would have been quite harmful to the community.

\*\*\*

11

After a careful review of the parties' filings, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** that the Defendant's Motion for Compassionate Release [ECF No. 74] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida, this 10th day of October 2022.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:  counsel of record